UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
AIDA PEREZ

               Plaintiff,                                         Civil Action No.  23-cv-1124

  -against-                                                       <u>COMPLAINT</u>

JOSHUA FRANKEL
ABRAHAM WASSERMAN
SAM WASSERMAN
ABSTRACT MANAGEMENT LLC
1111 OCEAN AVENUE TENANTS CORP
ELEVEN ELEVEN REALTY ASSOCIATES

               Defendants.

------------------------------------------------------------------------x

## NATURE OF THE ACTION

1. Plaintiff, Aida Perez, brings this action to recover unpaid wages for work she performed for Defendants from February 2017 through April 2022.

2. Plaintiff seeks unpaid wages, liquidated damages, interest and attorneys' fees for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 201 and New York Labor Law ("NYLL"), Article 6 Section 190, *et seq*. and Article 19 Section 650, *et seq*.

3. Plaintiff also seeks damages for Defendants failure to provide wage notices as required by NYLL § 195.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, because the conduct giving rise to the complaint took place in this judicial district. Furthermore, Plaintiff resides and, upon information and belief, Defendants have a principal place of business in this district.

## PARTIES

6. Plaintiff Aida Perez currently resides at 1111 Ocean Avenue, Apt D Lobby, Brooklyn, NY 11230 (hereinafter "Plaintiff's apartment").   Plaintiff worked for Defendants providing building services at 1111 Ocean Avenue, Brooklyn, NY 11230 (hereinafter "the premises" or "the building") from at least February, 2017 until she was terminated on April 9, 2022.

6. Defendant 1111 OCEAN AVENUE TENANTS CORP (hereinafter" Defendant Owner" or "1111 Ocean Avenue Tenants") is a cooperative corporation and owner of the premises.  The principal place of business for Defendant 1111 OCEAN AVENUE TENANTS  is 307 Rutledge Street, Brooklyn, New York 11211. At all relevant times, Defendant 1111 OCEAN AVENUE TENANTS was, and continues to be "an enterprise engaged in commerce" within the meaning of FLSA. At all relevant times, Defendant 1111 Ocean Avenue Tenants was Plaintiff's employer.

7.  Defendant ABSTRACT MANAGEMENT LLC is the management company for the Defendant Owner.  The principal place of business for Defendant ABSTRACT

MANAGEMENT LLC is 1378 East 28th Street, Brooklyn NY 11210. Defendant ABSTRACT MANAGEMENT became Plaintiff's employer at the end of August, 2019.

8. Upon information and belief, Defendant Joshua Frankel is the president of ABSTRACT MANAGEMENT LLC. The principal place of business for Defendant Joshua Frankel is 1378 East 28th Street, Brooklyn NY 11210. Defendant Joshua Frankel directly supervised Plaintiff and terminated Plaintiff's employment on April 8, 2022 effective April 11, 2022. Joshua Frankel was Plaintiff's employer from the end of August, 2019 until he terminated her employment in April, 2022.

9. Upon information and belief, Defendant ELEVEN ELEVEN REALTY ASSOCIATES, with offices at 307 Rutledge Street, Brooklyn, New York 11211 is the majority shareholder of Defendant 1111 OCEAN AVENUE TENANTS CORP and in its role as main shareholder has control over the Defendant 1111 OCEAN AVENUE TENANTS CORP. At all relevant times, Defendant ELEVEN ELEVEN REALTY ASSOCIATES was Plaintiff's employer.

10. Defendant Sam Wasserman is listed as the "Head Officer" of 1111 Ocean Avenue Tenants in the New York City Housing and Preservation Department Building info on-line for the premises. Upon information and belief, Sam Wasserman and his wife are equal partners in the partnership of Defendant ELEVEN ELEVEN REALTY ASSOCIATES. At all relevant times, Defendant Sam Wasserman was Plaintiff's employer.

11. Defendant, Abraham Wasserman (hereinafter "A. Wasserman"), Defendant Sam Wasserman's son, directly supervised Plaintiff's work during all relevant periods. Defendant Abraham Wasserman was registered as the head officer for 1111 Ocean Avenue Tenants

Corporation with the New York City Housing Protection and Development (HPD) in November, 2021.  At all relevant times, Defendant Abraham Wasserman was Plaintiff's employer.

## **STATUTORY AND REGULATORY FRAMEWORK**

12. Congress passed the Fair Labor Standards Act ("FLSA") in 1938 in order to protect workers from substandard wages, oppressive working hours, and labor conditions detrimental to the maintenance of a minimum standard of living.  The statute has both remedial and humanitarian purposes designed to protect human dignity.

13. At the heart of the FLSA are provisions requiring employers to pay a minimum wage and setting overtime pay rates.  29 U.S.C. § 206.  Since July 25, 2008, the minimum wage is set at $7.25 per hour.

14. FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).  Covered employers under the FLSA are those who engage in related activities in commerce for a common business purpose and who have a gross volume of business which is not less than $500,000.00 per year. 29 U.S.C. § 203(s)(1)(A)(ii).

15. Employees under FLSA are any individuals employed by a covered employer. 29 USC § 203(e)(1).

16. Employers covered by the FLSA must make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment.  29 U.S.C. §§ 211(c) and 215(a).

17. Where an employer's violations of the FLSA are willful and intentional and where the employer has not made a good faith effort to comply with the FLSA, the employee

will be entitled to recover his unpaid overtime wages and an equal amount in liquidated damages, prejudgment interest as well as reasonable attorney's fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

18. New York Labor Law §663 provides that "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."

19. Pursuant to New York Labor Law §652, the basic minimum hourly wage for each hour worked in New York City for small employers of 10 or fewer employees is: $10.50 per hour on and after December 31, 2016; $12.00 per hour on and after December 31, 2017; $13.50 per hour on and after December 31, 2018; $15.00 per hour on and after December 31, 2019.

20. The New York Labor Law's minimum wage provisions were enacted to eliminate the condition of uncompensated or undercompensated work. In passing the minimum and overtime wage provisions, the New York Legislature emphasized that uncompensated labor harms workers and uncompensated labor harms the well-being of society as a whole. NYLL § 650. The Legislature found:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public moneys for relief or other public and private assistance.

      Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.

21.    Any individual, limited liability company or corporation or organized group acting as an employer, is a covered employer. New York Labor Law §651(6).

22.    NYLL §191 requires that manual workers must be paid weekly and not later than the end of the week in which the wage are earned.

23.    NYLL §195(1) provides that every employer shall furnish each employee, at the time of hiring, a notice that includes the rate or rates of pay, the regular pay; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different, and the telephone number of the employer.

24.    NYLL §195(3) provides that every employer shall furnish each employee with a statement with every payment of wages which must include, for all employees who are not exempt from overtime, the regular hourly rate or rates of pay; the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

25.    NYLL §195(4) provides that every employer shall maintain and preserve contemporaneous and accurate records of hours worked each week, and for all employees who are not exempt from overtime compensation, the payroll records shall include the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of hours worked, and the number of overtime hours worked.

26.    NYLL §198(1-a) provides that an underpaid employee is entitled to recover in a civil action the total amount of the underpayment, costs, attorney fees, and prejudgment interest, plus, if the underpayment was willful (without a proven good faith basis to believe that the

underpayment was in compliance with the law), additional liquidated damages equal to one hundred percent of the total underpayments due.

27. NYLL §198 provides that for violations of NYLL 195, an employee is entitled pursuant to NYLL §198(1)(b) to recover damages of $250 for each work day that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

## **FACTS**

28. Plaintiff Aida Perez moved into the premises with her family including her father, Luis Perez (hereinafter "L. Perez" or "Plaintiff's father"), when her father became the superintendent of the building in 1990. From 1999 through 2004, Plaintiff moved out of the premises and then moved back in and out several times, returning permanently in 2004.

29. Ms. Perez assisted her father with his work duties as a superintendent during the entire time she lived at the premises until her father passed away in August, 2021. Soon after her father passed away, Plaintiff began to take on much of her father's work and performed those duties until she was terminated in April, 2022.

30. From February, 2017 through approximately November, 2019 with the exception of approximately one month a year, Ms. Perez performed at least 5 hours of work per week for the Defendants. Plaintiff received no wages or any other compensation for the work that she performed from January, 2017 through November, 2019.

31. From approximately November, 2019 through July, 2021, with the exception of approximately one month a year, Ms. Perez worked five to eight hours a week for Defendants. Plaintiff received no wages or any other compensation for the work that she performed from November, 2019 through July, 2021.

32. The work that Ms. Perez performed for Defendants from February, 2017 through July, 2021 included assisting her father with cleaning windows, hallways and public areas, taking out and sorting the trash. During this period, Ms. Perez also assisted her father with communicating with tenants and Defendants regarding repairs and other building matters.

33. Defendants directly benefited from Plaintiff's work assisting her father as Plaintiff's father was not able complete the work needed to maintain the building on his own. The building has 102 apartment units. Plaintiff's father usually worked at least 58 hours a week and often worked an additional 10 or more weekly hours whenever there was a particularly time-consuming repair that needed to be addressed in the building.

34. The trash and recycling for the building was taken out to the curb four times a week. It took from 14 to 16 hours a week to sort, pack and take out the trash and recycling for the building.

35. In addition to Plaintiff, other members of Plaintiff's family also assisted Plaintiff's father in completing the tasks that were needed to maintain the building.

36. Defendants were aware that Plaintiff's father worked long hours and that Plaintiff assisted him with his work for the building. Despite this knowledge, Defendants never paid wages or any compensation to Plaintiff. Defendants never told Plaintiff they she should not assist Plaintiff's father or that she should not perform work for the building.

37. Upon information and belief, Defendants accepted Plaintiff's free labor and the free labor of her family members because it allowed them to lower their costs to maintain the building.

38. Upon information and belief, by keeping their costs down to maintain the building, Defendants were able to increase the profits that they made from the building.

39. Defendant A. Wasserman regularly came to the building on Fridays from at least February, 2017 until Defendant Frankel started to manage the building at the end of August, 2019. On these Fridays, Defendant A. Wasserman came to Plaintiff's apartment to discuss building maintenance and repair matters with L. Perez. Plaintiff was present at most of these Friday meetings and would participate in the conversations which included discussions regarding building maintenance, repairs, and building violations.

40. In addition, to speaking with Plaintiff during the Friday meetings at Plaintiff's apartment, Defendant A. Wasserman frequently communicated directly with Ms. Perez by phone and text regarding building maintenance and repair matters. Sometimes, Defendant A. Wasserman called Ms. Perez while she was mopping or doing other building work and she would inform Defendant A. Wasserman that she was in the middle of performing building work.

41. In late August, 2019, Defendant A. Wasserman told Ms. Perez that a new manager, Defendant Frankel, was taking over management of the building and that she should communicate with him directly.

42. After Defendant Frankel took over direct management of the building at the end of August, 2019, Ms. Perez and Defendant Frankel frequently spoke and sent text messages to each other regarding building matters until Plaintiff was terminated in April, 2022. For example, in a text sent by Defendant Frankel to Ms. Perez on September 7, 2020, Defendant Frankel wrote "I am going to tell this to your father too. The bldg is not clean. I am going to need a log every week a log of the days the bldg was washed. Which side and which floor and the time every day it's swept… This must be done for payroll to go thru. The bkdg must must be clean clean clean. No matter wHat." Plaintiff responded by saying "I will let him know." Defendant Frankel then sent a text message to Plaintiff stating "Unfortunately if it's not clean we will send someone in to

do it and the cost will be from your fathers chrck. My havda are tied. Bldg all sides and stairs must always b clean."

43. Plaintiff's father passed away in August, 2021.

44. After L. Perez passed away, Plaintiff's brother Angel helped to maintain the building for approximately three weeks.

45. At the end of August, 2021, Plaintiff began to work at least 38 hours a week cleaning the building including the hallways and public areas, taking out and sorting the trash and responding to other building maintenance matters.

46. After L. Perez passed away, Defendant Frankel and Plaintiff continued to communicate regarding building maintenance issues. For example, on August 29, 2021, Plaintiff sent text messages to Defendant Frankel regarding leaks in tenant apartments. Defendant Frankel told Plaintiff to call the plumber. On that same day, Plaintiff also informed Defendant Frankel that the front door window was broken and that she taped it up. Defendant Frankel responded by sending a text to Plaintiff stating "We need to sit down very very soon to figure out the super situation. It can't go on this way."

47. On August 27, 2021, Plaintiff reached out to Defendant Frankel regarding forms needed to get her onto payroll. She continued to reach out to Defendant Frankel several times after that regarding paper work that was needed so that Defendants would pay her for her work.

48. On September 17, 2021, Plaintiff received a text message from Defendant Frankel that the board had agreed to hire her as a temporary porter. Defendant Frankel explained that the porter job "means sweeping and cleaning the inside and the outside of the building the pulling of the garbage. Basically, the entire building inside and out needs to be clean. Are you on board?" Plaintiff responded by saying "I've done it for years with Dad ….I'm on board." Defendant

Frankel responded by stating "Ok. But now there is nobody helping you do this". Plaintiff responded by stating "I know and I'll have my kids help out after school and weekends Just like we've always done when Dad was here… Question: so what about the pay for these past weeks?" Defendant Frankel states "Well. Its porter pay and Porter doesn't get apt but you have so tell me what you think."

49. On October 11, 2021, after she still had not received any wages for her work, Plaintiff sent a text message to Defendant Frankel complaining that she hadn't been paid for any of her work. After this, Defendant Frankel and Plaintiff sent text messages back and forth regarding the hours that Plaintiff worked and how many hours the board was willing to pay her. Plaintiff explained that she worked from 7 a.m. to 3 p.m. and often put in additional hours. Defendant Frankel indicated Defendants were not willing to pay her for full time work. Plaintiff sent a text stating "if I work 40 hours a week and get paid for 25, it is what it is."

50. Starting some time at the end of October or early November, 2021, Defendants began to pay Plaintiff $275.00 a week, which upon information and belief represented 18 hours of work per week even though Plaintiff worked at least 38 hours each week.

51. Plaintiff received $5,225.00 in gross wages from Defendants in 2021 representing 19 weeks at $275.00 per week, which upon information and belief represented 18 hours of work per week even though Plaintiff worked at least 38 hours each week.

52. Plaintiff received $3,850.00 in gross wages from Defendant in 2022 representing 14 weeks at $275.00 per week, which upon information and belief represented 18 hours of work per week even though Plaintiff worked at least 38 hours each week.

53 Despite working at least 38 hours a week for Defendants from the end of August, 2021 through April 10, 2022, Plaintiff was never paid for more than 18 hours per week.

54. Defendants knew that Plaintiff was working at least 38 hours per week but never told her to stop working more than 18 hours a week.

55. Other than her work for Defendants, Plaintiff did not work for nor receive compensation from any other employer from February 2017 through April 11, 2022.

56. Defendants failed to provide Plaintiff with any statements regarding her hours, rate of pay, or anything else regarding her compensation from February, 2017 through October, 2021, which was the period that Defendants did not pay Plaintiff for her work.

57. In or around October, 2021, Defendants began to provide the Plaintiff with statements regarding her total weekly pay but said statements did not state the number of hours she worked and/or her rate of pay.

58. Upon information and belief, Defendants have collected over $500,000 in rent from the tenants at 1111 Ocean Avenue on an annual basis throughout the relevant time period.

59. According to the Department of Housing and Urban Development (HUD), the fair market rent (FMR) for Kings County is $2,123 for an efficiency, $2,170 for a one-bedroom, $2,451 for a two-bedroom, and $3,078 for a three-bedroom apartment. *See https://www.huduser.gov/portal/datasets/fmr/fmrs/FY2023_code/2023summary.odn* (last accessed December 23, 2022). HUD defines the FMR as the 40th percentile of rents paid by recent movers in a given FMR area. 24 C.F.R. §888.113. Since the FMR rent prices are at the 40th percentile of rents in the neighborhood, the FMR is slightly below median rents.

60. 1111 Ocean Avenue is a six-story building with one commercial unit and 102 residential apartments made up of 6 studio units, 66 one-bedroom units, 21 two-bedroom units, and 9 three-bedroom units. There is also an additional 3-bedroom unit reserved for the superintendent, where the Plaintiff resides. Using the FMR to estimate rent collection for all 102

apartments at 1111 Ocean Avenue, the Defendants would receive $12,738 per month for the 6 studios, $143,220 per month for the 66 one-bedroom units, $51,471 per month for the 21 two-bedroom apartments, and $27,702 per month for the 9 three-bedroom units. Utilizing the FMR to estimate rent collection for all apartments at 1111 Ocean Avenue, Defendants are estimated to receive rent of $235,131 per month or $2,821,572 per year.

61. Defendants owe Plaintiff at least $14,145.00 in unpaid wages from February, 2017 through the middle of August, 2021.

62. Defendants owe Plaintiff at least $9,735.00 in unpaid wages from the end of August, 2021 through April, 2022.

## FIRST CLAIM FOR RELIEF

### Unpaid Wages in Violation of FLSA

63. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

64. Upon information and belief, at all relevant times, Defendants were and continue to be employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.00 per year.

65. Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203.

66. Defendants failed to pay Plaintiff the statutory minimum wage for the hours she worked, in violation of the FLSA, 29 U.S.C. § 206(a).

67. Defendants' violations of the FLSA, as described herein, were willful and intentional. Defendants failed to make a good faith effort to comply with the FLSA with respect to the Plaintiff's compensation when they knew or should have known such was due and that failing to do so would financially injure Plaintiff. Plaintiff is entitled to recover from Defendants, jointly and severally, amounts to be determined at trial for her unpaid minimum wages, an equal amount as liquidated damages, reasonable attorneys' fees, and the costs of the action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

### Unpaid Wages under the New York Labor Law

68. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

69. At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

70. Defendants failed to pay Plaintiff the statutory minimum wage for the hours she worked, in violation of New York Labor Law § 652.

71. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay her the required wages in the lawful amount for hours worked in violation of the New York Labor Law.

72. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants amounts to be determined at trial for her unpaid wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1) and 198.

## THIRD CLAIM FOR RELIEF

**Late Payment of Wages Under the New York Labor Law**

73. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

74. Plaintiff performed manual labor for Defendants.

75. Defendants failed to pay the Plaintiff for any of her work for several years rather than weekly as was required by New York Labor Law §191.

76. Due to Defendants' failure to pay Plaintiff weekly, Plaintiff is entitled to liquidated damages in the full amount of all wages that were not paid timely plus interest and reasonable attorney's fees.

## FOURTH CLAIM FOR RELIEF

**Failure to Provide Statements Required by New York Labor Law**

77. Plaintiff realleges and incorporates by reference every allegation in all preceding paragraphs.

78. Defendants willfully failed to provide Plaintiff with a written notice of his wage rate and overtime eligibility, as required by NYLL § 195(1).

79. Defendants willfully failed to provide Plaintiff with statements, with every payment of wages, that included the actual hours Plaintiff worked and the rate of pay as required by NYLL § 195(3).

80. Plaintiff is entitled to $50 for each workday in which Defendants violated NYLL § 195(1), up to a maximum of $5,000. Plaintiff is similarly entitled to $250 for each workday Defendants violated NYLL § 195(3), up to a maximum of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)    Award Plaintiff damages for unpaid wages due under the FLSA and an additional equal amount as liquidated damages because of Defendants' willful failure to pay;

(b)    Award Plaintiff damages for unpaid wages and an additional equal amount as liquidated damages, pursuant to New York Labor Law § 663(1);

(c)    Award Plaintiff $5,000 for Defendant's statement violations of NYLL §195(3);

(d)    Award Plaintiff $5,000 for Defendant's statement violations of NYLL §195(1)

(e)    Award Plaintiff pre- and post-judgment interest;

(f)    Award Plaintiff the costs of this action together with reasonable attorney's fees pursuant to New York Labor Law § 663 and 29 U.S.C. § 216(b); and

(g)    Grant such other and further relief as this Court deems necessary and proper.

February 10, 2023
Brooklyn, NY

Respectfully submitted,

*/s/ Nicole Salk*

BROOKLYN LEGAL SERVICES
Attorneys for Plaintiff
105 Court Street, 3rd floor
Brooklyn, NY  11201
(718) 237-5544
NSalk@lsnyc.org

BY:    Nicole Salk